Good morning, Your Honors. May it please the Court, my name is David Michael. I am the attorney for Thomas Grossi. I was his attorney through all of these proceedings ever since 2004. I think the best way I want to approach this is to, in terms of understanding why we're here right now, is to go back to the original proceeding which led to the case back on August of 2007. That's in my excerpt of record at page 22 to 30. After Mr. Grossi was convicted of the one count of maintaining a place where his tenants were growing marijuana, the Court, which was the Market Street property, the Court then ordered the entry of what's called a preliminary order of forfeiture as to that property, which is an appropriate thing to do. Once the Court entered that preliminary order of forfeiture, anybody who wanted to can come in and claim that the order should be modified or should be set aside based on some interest that they may have in the property. So Mr. Albert DeMaso came in because he had a $250,000 mortgage interest in the property. Loretta Weimer came in because she had originally a $100,000 interest in the property, which the Court later determined to be about $87,000. And Mr. Grossi came in and filed a petition for modification and set aside of the preliminary order of forfeiture. That's the normal procedure that happens under 21-853-N. That's how you do it in forfeiture cases. And Judge Jensen had a very thorough hearing regarding all of those competing interests. And it's very important what Judge Jensen decided in that August 2007 decision, because that determination has never been disturbed by this Court, no matter when it came up and what issues were raised. Judge Jensen decided, and he decided consistent with every single circuit that has ever addressed this issue, including the U.S. Supreme Court, that the interest of the parties is determined at the time of the commission of the illegal acts, not just the interest of third parties, but the interest of the government is determined then. That's a whole basis for the government's claim about this relation back theory. Everything goes back to the time of the commission of the illegal act, and the interest of the people are fixed at that time. What did Judge Jensen decide after conducting a full, fair hearing regarding this whole issue? Decided that the commission of the acts that led to the right of the government to forfeit the property ended in, I think, June of 2004. Why did he pick that date? That's the date that everybody was arrested. The police officers, you know, seized the property. The tenants were arrested, and Mr. Grossi was ultimately charged with maintaining that place. That's the last criminal act. That's why the Court fixed that date, because once the last criminal act occurs, nothing else criminal is occurring regarding those properties. So Judge Jensen made the right decision about he had to fix the interest of everybody at that time in 2004. He fixed the interest of the government in the government's interest is only the defendant's interest in the property. It's a criminal forfeiture. The government's interest only is the interest of Mr. Grossi at that time. But when the Court considers other interests, it determined that Mr. Delmasso had a superior interest to Mr. Grossi, because 21A53N says that if a third party has a superior interest to the defendant, at the time of the commission of the illegal act, that third party has that right and it can't be disturbed. Mr. Michael, let me tell you the problem I have with this, and you tell me where I'm missing the boat. Back in January 2006, Judge Jensen entered this preliminary order that says this $608,000 from the Market Street property is hereby forfeited. Correct. Then in August of 2007, he says I amend that to give a, to reduce that amount by $87,000 and change. He reduced it by more also, by the Delmasso interest too. Okay. It was way down to $300,000. He takes the preliminary order, which says the whole thing is forfeited, and he reduces it by whatever it is. Correct. That goes up on appeal. Correct. Ninth Circuit says he was wrong about reducing it. The forfeiture is affirmed. Right? I don't think so. Well, let me read it to you, see what we get it exactly. The prior appeal says, therefore, Grossi's forfeiture is upheld. That's the exact quote. Okay? Correct. It goes back, and Judge Jensen says, well, it's been upheld. I'm going to implement what the court says, and I don't get why you get to appeal it again. Well, because the Court of Appeals in issuing the mandate said that the order of the court is upheld, the forfeiture is upheld. But Judge Jensen never, prior to the mandate, ordered the forfeiture of that $87,000. Judge Jensen specifically excluded that from his final order of forfeiture. What I'm confused about is why you don't why this appeal doesn't resolve everything you raised before and everything you could have raised before. Well, no, but we did raise other issues. What Judge Jensen decided is that the issue of equitable subrogation applied to the case. We won. I won in the district court, and the judge applied this principle called equitable subrogation. And that was reversed. It was only reversed as to equitable subrogation. And the bottom line of the appeal was the forfeiture is upheld. The forfeiture that Judge Jensen issued was never the whole amount. I'm reading it. I mean, this is what it says. Therefore, Grossi's forfeiture is upheld. Yes, Your Honor, but there was no district court. And then he goes back and says, okay, it's been upheld. I'm going to do what they say. And you're back here again. I don't get why. No. I think Judge Jensen, the court of appeals sent it back to the district court saying that the judgment is upheld. But the district court did not have a judgment forfeiting that whole amount. There was no judgment forfeiting that amount. In fact, once it came back on mandate, what Judge Jensen said is, look, I can not ‑‑ matter of fact, he used an interesting language. To me, it was like sort of a signal language. He said, I do not have a jurisdiction to address your issue at this juncture. And the reason he said that is because the mandate was silent. He said the order of the Court was silent in terms of what he could do. So then, after the court of appeals ruled, only then in the subsequent hearing did Judge Jensen say, I now hereby order all of it forfeited. That's the only time he did it was after the court of appeals ruled against me on the issue of equitable subrogation. So the issue of how much was to be forfeited was still an open issue when the court of appeals sent it back to Judge Jensen. It was. He had only ordered the forfeiture of the amount less than $87,000. You know? And I think what's really important for the Court, and I think it's important in a more broad way, too, is that once we had won in the district court, we can't raise other issues. It's like asking the Court for an advisory opinion. We won, and the government appealed it. That doesn't mean that we should be precluded from raising other substantive issues that address the same thing because we had won before. It's like being punished for winning, and I don't know how equitable or fair that is. This is your answer to Judge Silverman that the Ninth Circuit decided the equitable subrogation issue, but they didn't say anything about the issue as to whether this money was ever forfeited in the first place. They just didn't address it. They did not. And if you look at Judge Jensen's original order, his final order of forfeiture on August the 10th, he never forfeited that $87,000. He specifically excluded it. That was his final order of forfeiture at that time. I would like to reserve five minutes of my time, if I may. Do I have about five minutes? About six minutes. So that was that important issue, and I, of course, grappled with that myself, Your Honor, you know, in thinking about how to deal with that. And I read that, the order of the court of appeals. If the court of appeals, I believe, would have said, we remand this case back to the district court to make a further determination consistent with our order, Judge Jensen would have felt free, free to have considered our other arguments. The court did not do that. The court of appeals did not do that. And Judge Jensen specifically said, I don't see any instructions for me to do anything. It's not that he felt that the court was ordering him to forfeit it all. He felt he had no choice because he had no instructions to do anything. And that's why he said in his unique language that he does not have any jurisdiction to address it at this juncture, which, of course, inspired me and led me to come back to this court. But more fundamental is that nothing ever disturbed the fact that Judge Jensen found, and all the circuits agree, that there's no way this money is the government's money. It can't be the government's money. The statute says it can't be the government's money. There's no law. There's no decision. Even the Supreme Court has said this can't be the government's money. The government's interest in that property is fixed. It's only the interest of the defendant at the time of the commission of the illegal act. Judge Jensen's ruling that that $87,000 was not defendant Grossi's money at the time of the commission of the act, the same way that Del Maso's $250,000 wasn't Grossi's interest at the time, that can't be disturbed. It can't be disturbed by law, and it can't be disturbed by some ambiguous and I don't want to disparage the earlier panel, if you know what I mean. Go ahead, everybody else. But these things are recorded, and everybody goes and listens to them. But I think that it was, if anything, vague, ambiguous, not decisive in terms of what Judge Jensen's power was, and he expressed that when we were back in court in front of him. And I'd like to reserve the rest of my time. You bet. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Susan Gray on behalf of the United States. The district court previously ordered the forfeiture of Grossi's entire interest in the proceeds of the sale of the marijuana, of the Market Street property, which had been used to facilitate a commercial marijuana grow. And that was part of the judgment and his sentence in the criminal case. This Court expressly affirmed the forfeiture of Grossi's entire interest. There was no remand to the district court to consider any further challenges to the whole process. The district court just said Grossi's forfeiture is upheld. What does that mean? Well, actually, Your Honor, the mandate didn't remand anything. So first of all, our position would be that there was nothing left for the district court to do. But if you actually look at the entire opinion, if for any reason the mandate is not clear, the court, of course, Kellington tells us that we look at the opinion to find out ultimately what did the court decide. And the court, in that initial opinion, starts with the premise that Grossi was ordered on page 1 of the opinion, was ordered to forfeit his entire interest in the proceeds from the forfeiture sale of the Market Street property. The district court calculated this amount at $345,347.28. The court of appeals then affirmed the forfeiture of that entire amount. And it did so on the last page. And I think it's very instructive in the way that the court of appeals, when it considered this, went at this, the two issues that were raised, which was, one, the excessive fines issue that Mr. Grossi had raised at the first appeal, and secondly, whether or not the amount that he had been ordered to forfeit should be reduced by some third-party claim via or to him through an equitable subrogation argument. And they did not first decide the excessive fines argument. Instead, what they did, Your Honor, is they went through the $87,000 reduction that the district court had given Mr. Grossi under the equitable subrogation doctrine, and then after they had reversed that, they went back to the amount and said that he had been ordered to forfeit and found that that amount was $354,000 and that it was not an excessive fine. So by implication, Your Honor, if not, quite frankly, expressly, the court has already been. Breyer. Well, it's not expressed. Oh, I'm sorry. It seems to be coming out rather loud, Your Honor. Oh, I'm sorry. I got you. No, I think it's not expressed, right? It has to be by – your argument has to be it's by implication. Well, Your Honor, I went back and I read through the opinion again. And when they uphold his forfeiture, they are talking throughout that opinion at $354,000. So implicit in that, if not expressed, is the fact that they have upheld that specific amount to be forfeited. If we agree with Mr. Grossi, there was something in the record about your objecting that you conceded the Delmasso $250,000, but you, Lien, but you disputed the legitimacy of the Sisters, Lien. Is that still an issue? Let's say he wins. Grossi wins here. Do we have to have an ancillary proceeding or is that? No, Your Honor. If I may, just to take a step back, the forfeiture, criminal forfeiture proceeding is essentially divided into two sections. First, the initial trial, the preliminary order of forfeiture, which sets the amount that Mr. Grossi has been ordered to forfeiture – ordered to forfeit, which in this case the Court found to be his entire interest of $600,000. At that point, when that preliminary order of forfeiture is entered, that's the end of it, of the dialogue between the government and Mr. Grossi as to how much he gets back. That preliminary order of forfeiture becomes final at sentencing, but for any claims of third party. So once that preliminary order of forfeiture is done, Mr. Grossi has no authority to negotiate with that money. At that point, then, the Court turns its attention to the ancillary proceeding, which is to determine any third-party claims. And as this Court told us in Hooper, the case I cited in my brief, there are only two very narrow types of claimants, third-party claimants, that can come in. To make it – to shorten this out, though, that portion of this case is over. The Delmasso claim has been settled. He's no longer in this case. And the Weimer claim has been settled because the court of appeals found previously that that claim was extinguished. So the only issue now is we're back to essentially the preliminary order of forfeiture and the end of it. But Grossi stands in Weimer's shoes, right? So no, Your Honor, he does not, if you'll pardon me. And he cannot, and the statute tells us that he cannot, he cannot stand in the shoes of a third-party claimant. 853N specifically says that third-party claims are only as to those other than the defendant. And that's in 853, I think, N, and also then under Federal Rule of Criminal Procedure 32.2C, which describes the ancillary proceedings as only to a third-party. 853N describes the type of people who can come in to a third-party claim. Essentially, what this Court said is the case over then or what? We might be back. I think we would disagree very strongly with you, because, quite frankly, the order we order, my question is, if we reach that, and you don't have to agree that we should. I obviously don't. But if we decided that he should win, what order do we enter? You would remand it back to the district court to modify the final order of forfeiture. But, Your Honor, he would get the 87,000. He would get that, which, quite frankly, is prohibited by the statute, Your Honor. 853 says under 853H, any property or interest not that does not belong to the United States shall expire and shall not refer to the defendant. But he's saying it's never his. That's basically it shall not refer to the defendant, but basically he's saying that that was never your property in the first place. His argument is that that was never forfeited properly in the first place. And we disagree, Your Honor. Okay. I understand. Let me follow up. Excuse me. Go ahead. Oh, I'm sorry. I didn't mean to step on your answer. No. And the reason that we disagree is because of the way that the forfeiture laws are written, which is, number one, that the time for Grossi to stand up and say, wait a minute, I have some sort of interest in this $87,000, is, one, at the time of the preliminary order of forfeiture. And under 853H he was recognized in the act. But Weimer stood up then. Pardon me? Weimer stood up then. But that was a third party who was recognized in the act. But he's at the end, he paid the loan. You're saying that he shouldn't have paid her? Is that what you're saying, that it's better off to not pay off debts? No, Your Honor. But essentially what you're saying is that any time a criminal defendant has been found guilty of running a commercial marijuana operation and he has outstanding debts to anyone and he pays them off, then he should get some sort of set-off or credit for those payments. And this Court in the prior opinion specifically said, no, you don't have a right of set-off. When you go forward, you've been ordered to forfeit your property. And that's what the preliminary order of forfeiture said as to Mr. Grossi, and it became final at the time of the judgment and sentence. Let me ask you a couple questions. First of all, so then, under your view of the law in this case, Grossi is the appellant. He's not pursuing a third party claim, because he cannot, is that right? That's exactly right, Your Honor. He cannot. So tell me, just in a couple words, what claim is he pursuing? He wants to do over. He wants a mulligan. He wants to go back and attack the preliminary order of forfeiture, which became final as to him and his interests. It was But he's arguing here about his sister's interests. He has no standing to bring his sister's interests. 853N says only third parties can challenge and come in. He also said that the prior appeal dealt with his sister's interests, right? Isn't that what you said earlier? The prior appeal, in the prior appeal, let me back up a minute. In the prior district court action, Weimer, Mr. Grossi's sister, Laura Weimer, said, wait a minute, he owed me money on this property. At the time, referring back at the time in June of 2004, and the district court agreed with her and said that's right. And even at the time of sentencing, when he drafted the judgment and committal order, and he reduced it by her outstanding, we thought, he thought, $100,000 claim. But what happened and what this Court held is it had been paid off. So to the extent that Mr. Grossi's sister had any interest in the forfeiture proceeds that were now in the possession and belonged to the United States, not could never belong to Mr. Grossi, after he was convicted, found guilty, this was found to be facilitating property, and the court in its initial preliminary order said, it's forfeitable. At that point, then the district court said to the to the, that she had a valid interest. But this Court said, wait a minute, he paid it off, it's been extinguished. Where we are right now in this case, Your Honor, is as if, as if the court had issued a preliminary order of forfeiture and there are no third parties in this case. The preliminary order, and the statute says that the preliminary order of forfeiture becomes final as to the defendant, absent third-party claims, Your Honor. So in a way, it's almost a misnomer. It is preliminary order of forfeiture only as to third-party claims. It is final as to the defendant. And when this Court affirmed to the district court that Mr. Grossi had a valid interest in this case, the court said, no, I don't think so, Your Honor. And this brings me to my waiver argument, and I think it's something that's important for the Court to note. At that point, the statute specifically provides that that is the time, after the preliminary order of forfeiture, for the defendant to come in and say, there should be a modification or revision to this preliminary order of forfeiture. There's something wrong with it. Maybe I don't have, you know, I don't, as he cited the Pacheco case, I only own half of the property. That's not the case here. He's never contended that he owns only half of the property. So the time for him to object to it was right then. He could have also objected at the final order of forfeiture when the district court said the property has now been forfeited. And that's on the first page of the August final order of forfeiture. So the court specifically says the property is now forfeited. But he's saying, isn't he standing in his sister's shoes? He is not entitled to stand in his sister's shoes, Your Honor, because he is a convicted defendant. This is part of his sentence, which the court, it says, it shall be forfeited. And this Court has already held in the prior opinion that he cannot stand in his sister's shoes under an equitable subrogation theory, and what other theory would he have? This Court simply said when a defendant pays off a personal debt or even a mortgage, he doesn't have to. So you're saying he never should have paid her. If it was a bank, let's say it was a bank, like in the Pacheco case, there was a bank out there, and the people didn't pay the bank, and the bank then came in and got their money. So you're saying that the moral of this story is, is don't pay any creditors? No, Your Honor, that isn't the moral of the story. I think he made a decision because he didn't, to pay off his sister, which, on a personal debt, which is commendable. There's no question about it. But the idea that any time a defendant whose property is forfeited as facilitating property, let's remember this was a large commercial marijuana grub that we're talking about here, continues to pay his mortgage, that's his decision whether he wants to or not. If he didn't, then the bank would come in and claim an interest. But in this particular case, that interest, his sister's interest, has been extinguished, and that's, that was the holding, explicit holding of this case, the first time. If I might, Your Honor, I want to go back just to whether he could have appealed that if he had complained and said, wait a minute, I have some $80,000 interest in this that shouldn't be forfeited. He didn't. He didn't do it in terms of the preliminary order of forfeiture. He asked to modify that, but he asked to modify it on the basis of the Eighth Amendment and the excessive fines argument he then later made in the court of appeals. But it's not only that he didn't make it, he waived it. Because if you look at the document he filed in favor of his sister's claim, he specifically – and this is at Supplemental Excerpt of Record 144 – he specifically says, I waive and give up and relinquish any interest I have in this $100,000 loan, and I make no further claim against the United States for any of the principal amount of this $100,000. So to the extent that he's now claiming, wait a minute, it was never forfeited, that's certainly not the position he took below, and it's certainly not the position he took in any of the filings previously before this Court, Your Honor, in that he consistently has recognized that the $609,000 was subject to forfeiture. He did that. He did his sister in their petition for rehearing, rehearing in Bonk. And so this is the first time that he's come in and said, wait a minute, time out, this was never forfeited. Roberts. I see you're out of time. Thank you, Ms. Gray. Thank you, Your Honor. Mr. Michael, back to you. This issue is big. It involves thousands of people who have their boats, their cars, and their homes seized by the government. It takes years before they have a chance to litigate whether or not they have an innocent ownership interest in the property or whether or not the government can forfeit that property. Lenders are always looking for their money to be paid back. If people don't pay their mortgages, if they don't pay their loans on their boats or their cars or their trains or whatever they own, they run into other serious problems. So for the government to claim that they should be punished for acting responsibly is kind of an absurd position for the government to take. But most importantly, I want to ---- But you had a prior appeal. Well, I don't think that precluded the issue that we're here to talk about. How many times can you keep appealing it? I mean, you had a prior appeal. They had a cross appeal. But we didn't have a ---- You lost, they won, and that's what Judge Jensen said. But we didn't have a prior appeal on the $87,000. Well, that's your problem for not appealing. No, we won it in the court below, Your Honor. I know, but they appealed, they made a cross appeal, and you defended it, and you lost. But that didn't mean that we can't raise that issue before the district court. Remember ---- How can you raise it at the district court if you already lost it here? Because the court of appeals didn't decide that issue on that basis. It did not. It just said that the court can't use equitable subrogation to protect that interest. What the district court found in its final order of forfeiture, which I think is really important in terms of what Ms. Gray has said here, she's correct that when you do the district court from the preliminary order of forfeiture to the final order of forfeiture, it's as a third party's interest. But Judge Jensen found in August of 2007 that that $87,000 was Loretta Weimer's $87,000. It did not have anything to do with whether or not it was Mr. Grossi that was making that issue. Once that court made that decision, we are at this crossroads right now. What do you do? The government ---- the court has determined that a third party has an interest in this property. It's not the government's. It's not the government's at all, and it can't be the government's under the statute. It's a third party's. What can this Court do when a defendant or the person who's the ---- that's the defendant in the case, what can this Court do when that person, during the pendency of the case, continues to pay the mortgage or continues to pay the loan? That person needs to be protected. That's not the government's money. It's the government's money.     You could argue that Wakhan F abb at the moment could also be the court of Florida. That's your position. P Can't raise the right, which sounds like what you're arguing. No, I'm not. That's that's an interesting point. He's not raising the issue of a third party. That's already been fixed. What he's saying is that I paid my money to pay that money down, and that's not the government's money. It's mine. It's Croce's money, not under a preliminary order of forfeiture. That's an old question I could have raised way back, right? That's not a new one. We did raise it. We did raise it way back. You could have raised it in your first appeal. No, no. We won in the district court. We can't raise an issue that we already raised issues that we already had won on. It was the government's appeal on the $87,000. I don't want my client to be punished for not raising an issue he didn't have to raise because he had won it in the district court. Anyhow, thank you, Your Honors. Thank you. Thank you, Mr. McCracken. It was great. Thank you. The case just argued is submitted.
judges: Adelman, Tashima, Silverman